**In re Frank Howard MATTHEWS and Grace Willina Matthews, Debtors.**

**TRANSAMERICA FINANCIAL SERVICES, fka Pacific Finance Loans, a California corporation, Appellant,**

v.

**Frank Howard MATTHEWS and Grace Willina Matthews, Appellees.**

**BAP No. CC 81–1066HGV.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Submitted July 15, 1981.

Decided Feb. 17, 1982.

Reynold F. Paris, Paris & Paris, Santa Monica, Cal., for appellant.

Douglas D. Kappler, Lompoc, Cal., for appellees.

Before HUGHES, GEORGE and VOLINN, Bankruptcy Judges.

## OPINION

HUGHES, Bankruptcy Judge:

Transamerica Financial Services appeals from orders fixing the value of an automobile for purposes of redemption, 11 U.S.C. § 722, and avoiding security interests in a television set and a piano, 11 U.S.C. § 522(f)(2). We affirm the valuation as not clearly erroneous but reverse the lien avoidance order.

## I

Mr. and Mrs. Matthews borrowed $4548 from appellants on September 1, 1978. None of the loan proceeds were disbursed to the debtors; instead, Transamerica paid $2058 to O'Keefe's Furniture for a television set and $2000 to Baldwin Music for a piano. The balance of the loan consisted of insurance premiums and fees paid to public agencies.

Transamerica secured the loan with a 1975 Datsun and all household goods of the debtors. It is conceded that the television set and the piano were covered by the household goods clause.

Somewhat more than a year later, on October 31, 1979, debtors requested a reduction in their monthly payments. They then executed a new loan agreement whereby the balance of the first loan was paid off and debtors received $63 cash for amortization convenience.

The second loan was also secured by the 1975 Datsun automobile and by the piano and television set.

Upon filing bankruptcy, debtors sought a valuation of the 1975 Datsun for purposes of redemption. 11 U.S.C. § 722. They also asked the court to avoid Transamerica's security interests in the piano and television set. 11 U.S.C. § 522(f)(2). The trial court fixed the value of the Datsun at $1000 and ordered the lien avoided. This appeal followed.

## II

Evidence as to value of the automobile was minimal. Mr. Matthews gave his opinion and a Transamerica employee, who testified he had inspected the vehicle from the outside when the loan was made, gave his. Transamerica's complaint is not that the valuation is clearly erroneous but that the trial judge should have sought additional evidence. However, it cites no authority for the proposition that the court, rather than the parties, has the duty of producing evidence. We are satisfied that there is no such duty and that the finding of $1000 value was not clearly erroneous.

### III

In avoiding Transamerica's lien on the television set and piano, the trial court held that the transaction had lost its purchase money characteristic when the second loan was made. The appellees make a variety of arguments supporting that holding, all of which we find unpersuasive.

### A.

Although purchase money security interests are expressly excepted from the avoiding power given the debtor by 11 U.S.C. § 522(f)(2), the Code does not define the term. It obviously applies to a transaction whereby the seller retains a security interest in the property sold. It also would seem applicable where, as here, the sole purpose of the loan was to buy specified property from third parties and that the property is used as collateral for the loan.

The Uniform Commercial Code, as adopted in California, is consistent with the foregoing definition. California Com.Code § 9107 reads:

A security interest is a "purchase money security interest" to the extent that it is

(a) Taken or retained by the seller of the collateral to secure all or part of its price; or

(b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Appellees do not disagree. They urge, however, that the purchase money character of the original transaction was lost on a variety of grounds. They argue:

1. The additional collateral (automobile and household goods) deprived it of its purchase money character, citing *In re Booker*, 9 B.R. 710 (M.D.Ga.1981).

2. If the original transaction was purchase money, it was paid off by the second loan and the second loan was not used to acquire the television set or piano.

3. Even if the second loan was merely a modification of the original loan, the collateral was security for $63 (not to mention

insurance premiums), which is non-purchase money indebtedness. Citing some cases construing the Uniform Commercial Code and other cases construing 11 U.S.C. § 522(f)(2), appellees state that when property becomes security for debts other than its purchase price, any purchase money security interest that may exist is destroyed.

■ Appellees' first two arguments need not detain us. Neither appellees nor the *Booker* court explain why the additional collateral should affect the purchase money nature of the security interest given in the television set and piano. Nothing in the Code nor the legislative notes is cited to support this result, nor is it suggested how the additional security conflicts in any way with the legislative objective of 11 U.S.C. § 522(f)(2).

Accordingly, we hold that for purposes of this provision the taking of additional, non-purchase money collateral does not affect the purchase money security interests in the television set and piano.

■ Whatever the form of the second transaction, it was sought by the debtors and was intended as a modification of the original loan for purposes of extending the monthly payments. We hold that it was a modification and that the form of the transaction did not work a conversion from purchase money to non-purchase money.

The more difficult argument remains to be considered.

### B.

■ Appellees cite several bankruptcy court decisions in support of their position. Not all are apposite, however. In at least two cases, *In re Coronado*, 7 B.R. 53 (D.Ariz.1980) and *In re Scott*, 5 B.R. 37 (M.D.Pa.1980), the decision turned on law other than section 522(f)(2). The *Coronado* court held the security agreement was unenforceable because unconscionable and the *Scott* court denied reclamation under Pennsylvania's version of the Uniform Commercial Code.

Nevertheless, at least two other cases are on point. A security interest was avoided under section 522(f)(2) in *In re Mulcahy*, 3 B.R. 454 (S.D.Ind.1980) because the collateral was security for more than the unpaid purchase price. Likewise, section 522(f)(2) was invoked to avoid a lien in *In re Krulik*, 6 B.R. 443 (M.D.Tenn.1980) where "each item secured payment not only of its own purchase price, but the purchase price of other items and any future indebtedness." See also, *In re Jones*, 5 B.R. 655 (M.D.N.C. 1980), *In re Slay*, 8 B.R. 355 (E.D.Tenn. 1980).

These holdings are based on cases that have construed provisions of the Uniform Commercial Code relating to purchase money security interests. The leading case is *In re Manuel*, 507 F.2d 990 (5th Cir. 1975), but an oft-cited case was decided in 1966 by a bankruptcy judge. *In re Simpson*, 4 U.C.C. Rep. 243 (W.D.Mich.1966). In the U.C.C. cases, the purchase money security interest characterization is relevant to determine whether a particular security interest is perfected without filing or possession. In both *Manuel* and *Simpson* the courts held that non-purchase money indebtedness that was secured under a future advance clause tainted the transaction for purposes of perfection. (This was dicta in *Simpson* because the court found perfection through possession by the secured party).

On the other hand, there is the contrary view of at least one commentator. In Coogan, Hogan and Vagts, Secured Transactions under the U.C.C. (Bender's U.C.C. Service), Professor Hogan states at § 19.-02[1][c]:

"If the interest secures more than the price of the goods, is it a purchase money security? Nothing in the Code suggests that such a security interest is not a purchase money security interest to the extent of the amount due as the price."

Implicit in the foregoing statement is the assumption that the amount of the purchase price is distinguishable from the non-purchase money indebtedness. Accordingly, courts have found the *Manuel* rule inapplicable when this can be determined. For instance, where a statute allocates payments between new and existing contracts in proportion to their original cash prices, the purchase money security interest remained as to the unpaid purchase price. *In re Brouse*, 6 U.C.C.Rep.Serv. 471, 474–5 (W.D.Mich.1969). Likewise, when the agreement itself specifies the first-in, first-out method of applying payments, the *Manuel* rule is not used. *In re Staley*, 426 F.Supp. 437 (M.D.Ga.1977).

Indeed, the U.C.C. rule is said to be: "[I]f consumer goods secure any price other than their own, *and there is no formula for application of payments*, the security interest in the goods is not purchase money." *In re Mulcahy*, supra, at 457. Emphasis supplied.

The courts' construction of purchase money security interest for U.C.C. perfection purposes is neither controlling nor necessarily relevant in construing the term for lien avoidance in bankruptcy. Furthermore, except for practical difficulties in allocating between purchase money and non-purchase money debt, no reason is apparent why the $63 cash advance, and of itself, should destroy the purchase money nature of the security interest.

We therefore conclude that Transamerica's security interest is not avoidable under 11 U.S.C. § 522(f)(2) unless, on remand, the trial court is unable to determine the amount of total indebtedness that is allocable to the purchase price.

On remand, an order should be entered that avoids the security interest except to the extent of the remaining indebtedness attributable to the purchase price. In making that determination, the court may use any appropriate formula, whether based on statute, contract, common law or generally accepted accounting practice.

Affirmed in part; reversed and remanded in part.