In re Fernando CERASOLI & Sharon A. Cerasoli, Debtors.

Fernando CERASOLI & Sharon A. Cerasoli, Plaintiffs,

v.

FIRST NATIONAL BANK OF BERWICK & Domestic Sales & Service Company, Defendants.

Bankruptcy No. 5–80–00447.
Adv. No. 5–81–0070.

United States Bankruptcy Court, M.D. Pennsylvania.

Jan. 18, 1983.

John H. Doran, Wilkes-Barre, Pa., for plaintiffs.

Robert E. Bull, Berwick, Pa., for defendants.

## OPINION

THOMAS C. GIBBONS, Bankruptcy Judge:

The issue presented in this case is whether a security agreement executed several months after the sale of numerous pieces of home furniture created a purchase money security that cannot be avoided under 11 U.S.C. § 522(f)(2)(A). For the reasons stated herein, we find that the document created an unavoidable purchase money security interest.

The facts are as follows. A fire at the debtors' residence destroyed their household goods and furniture on August 14, 1978. The debtors ordered numerous pieces of furniture from the defendants, Domestic Sales & Service Company (Domestic), on November 1, 1978. Some of the furniture requested was in stock and was delivered promptly to the debtors' residence. The remainder was ordered on November 1, 1978, and was delivered over the course of several months. The final shipment of furniture was made in August of 1979. The furniture was purchased on credit. On August 31, 1979, shortly after delivery of the last piece of furniture, the debtors signed a security agreement which granted Domestic a security interest in all of the furniture purchased by the debtors. The First National Bank of Berwick is the current holder of the security interest. The security interest secured nothing but the purchase price of the furniture.

Section 522(f) of the Bankruptcy Code (the Code) allows a debtor to avoid certain types of security interests under specified circumstances. That section states as follows:

> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (h) of this section, if such lien is—
>
> (1) a judicial lien; or
>
> (2) a nonpossessory, nonpurchase-money security interest in any—
>
> (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
>
> (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
>
> (C) professionally prescribed health aids for the debtor or a dependent of the debtor.

In the case at bar we must determine whether the security agreement between Domestic and the debtors created a purchase money security interest which would not be avoidable under § 522(f)(2)(A). In support of their argument the debtors assert that the security interest in question is not a purchase money security interest since it was obtained several months after the sale of the furniture and since it secures numerous pieces of furniture which were delivered to the debtor at different times over the course of several months.

The Code does not define the term "purchase money security interest." Consequently, in order to define this term we must look to the applicable non-bankruptcy law, which is division 9 of the Pennsylvania Uniform Commercial Code. 13 Pa.Cons. Stat. §§ 9101, *et seq.* A purchase money security interest is defined at 13 Pa.Cons. Stat. § 9107 which states as follows:

> *§ 9107. Definition: "purchase money security interest"*
>
> A security interest is a "purchase money security interest" to the extent that it is:
>
>> (1) taken or retained by the seller of the collateral to secure all or part of its price; or
>>
>> (2) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

■ In applying this definition to the case at bar we find that the parties are in apparent agreement that Domestic holds a security interest in the furniture in question. We find that this security interest was "taken . . . by the seller of the collateral to secure all or part of its price . . . ." § 9107(1). Therefore, on its face the statute gives Domestic a purchase money security interest in the goods.

■ The fact that the security interest was not granted until several months after the debtors acquired an interest in the goods does not alter the purchase money nature of the security interest. Section 9107 provides no time limit for the acquisition of such a security interest and our review of the remainder of Article 9 of the Pennsylvania Uniform Commercial Code fails to reveal a time limit. Domestic's failure to comply with the ten day perfection requirement of § 9312(d)[1] does not deprive the creditor of the purchase money nature of the security interest, it merely provides that the creditor's security interest arose at the time of the executing of the security agreement rather than the time the debtor received possession of the goods. The consequences of this failure are not pertinent in the case at bar.

The debtor asserts that *In Re Manuel,* 507 F.2d 990 (5th Cir.1975) precludes our finding that Domestic holds a purchase money security interest. In *Manuel* the debtor purchased certain household furniture from Robert's Furniture Co. (Roberts) in December of 1972. He also purchased a television from Roberts in February of 1973. When he purchased the television, the debtor signed a security agreement granting Roberts a security interest in the television and the furniture. The security agreement also provided that the goods would secure all future indebtedness as well. The court held that Roberts had no purchase money security interest in the furniture and stated no conclusion as to whether Roberts held a valid security interest in the television. The basis of the court's decision is somewhat unclear although the court states that, "A plain reading of the statutory requirements would indicate that they require the purchase money security interest to be in the item purchased, and that, as the judges below noted, the purchase money security interest cannot exceed the price of

---

1. Section 9312 provides for priorities among conflicting security interests in the same collateral. Section 9312(d) states as follows:

    (d) Other purchase money security interests.—A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter.

what is paid in the transaction wherein the security interest is created. . . ." 507 F.2d at 993. The court seemed to assume that a purchase money security interest could not be created in the furniture after the passage of a substantial amount of time. As indicated above, we conclude to the contrary. We also find *Manuel* inapplicable to the case at bar since the debtors have not alleged that the security agreement provides for the securing of any future indebtedness. In conclusion, we find that Domestic has a purchase money security interest in the furniture in question.

Our conclusion that the creditor's security interest is of a purchase money nature and thus unavoidable under 11 U.S.C. § 522(f) is supported by the legislative history of the Code. The legislative history indicates that § 522(f) was not created for use in a situation such as in the case at bar.

Frequently, creditors *lending money* to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and the debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make.

The exemption provision allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in igno-

rance, by permitting the invalidation of nonpurchase money security interests in household goods. Such security interests have too often been used by over-reaching creditors. The bill eliminates any unfair advantage creditors have. (Emphasis added).

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 127 (1977). *See also, Coomer v. Barclays American Financial, Inc. (In Re Coomer),* 8 B.R. 351, 354 (Bkrtcy.E.D.Tenn.1980); *In Re Gibson,* 16 B.R. 257 (Bkrtcy.D.Kan.1981). The above quoted language indicates that § 522(f) was not incorporated in the Code to avoid security interests acquired by sellers of goods who take or retain a security interest in the goods sold.

For the above reasons we find that Domestic holds a purchase money security interest in the furniture. This security interest is not avoidable under 11 U.S.C. § 522(f).

This opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 752.