**In re Laura SPRAGUE, Debtor.**

**Laura SPRAGUE, Plaintiff,**

**v.**

**LANDAUS OF PLYMOUTH, INC., Defendant.**

**In re David D. TWARDOWSKI, Debtor.**

**David D. TWARDOWSKI, Plaintiff,**

**v.**

**LANDAUS OF PLYMOUTH, INC., Defendant.**

**In re John PRISTAS and Lois Pristas, Debtors.**

**John PRISTAS and Lois Pristas, Plaintiffs,**

**v.**

**LANDAUS OF PLYMOUTH, INC., Defendant.**

**Bankruptcy Nos. 5–82–00545, 5–82–00527 and 5–82–00591.**
**Adv. Nos. 5–82–0695, 5–82–0696 and 5–82–0689.**

United States Bankruptcy Court, M.D. Pennsylvania.

May 10, 1983.

Edward M. Pulaski, Wilkes-Barre, Pa., for debtors plaintiffs.

Louis Shaffer, Wilkes-Barre, Pa., for defendant.

OPINION

THOMAS C. GIBBONS, Bankruptcy Judge:

The issue presented in this case is whether a purchase money security interest in personalty loses its purchase money character upon the consolidation of the underlying indebtedness with that of a later purchase money security interest. A resolution of this issue will dictate whether the security interest is an avoidable lien under 11 U.S.C. § 522(f)(2) to the extent it impairs the debtors' bankruptcy exemptions. For the reasons stated herein we find that the purchase money security interest does not lose its purchase money status upon consolidation with a purchase or nonpurchase money security interest.

In this case we address the question of lien avoidance arising in three separate cases. Although the facts vary slightly among the cases, the issues involved are

identical and we issue a consolidated opinion to resolve them.

In the first case the debtor, Laura E. Sprague, purchased on credit certain household furnishings from the defendant, Landaus of Plymouth, Inc. (Landaus), on January 15, 1979. At that time the debtor granted Landaus a purchase money security interest in the items. After the debtor made several payments on the furnishings she made additional purchases from Landaus on March 19, 1981. A security agreement was executed which consolidated the outstanding balance of the January 15th purchases with the price of the March 19th purchases. The security agreement ostensibly gave Landaus a purchase money security interest in all the items. Upon the debtor's default in payment of the obligation Landaus obtained judgment against her. Based on the judgment a writ of execution was issued against the debtor's personalty. The writ gave rise to a levy on the personalty.

The facts in the Pristas adversary are essentially identical to those outlined above, while the Twardowski adversary differs only in that no writ of execution was issued. In all three actions the parties have waived an evidentiary hearing and have submitted the matter to the court on briefs. For the sake of clarity in the following discussion, we will discuss only the facts of the Sprague adversary.

## DISCUSSION

The issue is whether the purchase money security interest which was granted on January 15, 1979, was transformed into a nonpurchase money security interest due to the creditor's consolidation of this indebtedness with the later indebtedness. If the transformation did occur, the creditor's security interest in the household furnishings is avoidable under 11 U.S.C. § 522(f)(2) of the Bankruptcy Code to the extent that it impairs the debtor's exemptions in bankruptcy. This section provides as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) * * *

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

The debtor does not dispute that the creditor held a valid purchase money security interest prior to the consolidation of indebtedness nor does she challenge the purchase money nature of the security interest in the goods purchased on March 19, 1981.

Numerous cases have held that consolidation of the indebtedness underlying two or more purchase money security interests transforms the security interests into a nonpurchase money type. *See, e.g., In re Manuel,* 507 F.2d 990 (5th Cir.1975); *Mulcahy v. Indianapolis Morris Plan Corp. (In Re Mulcahy),* 3 B.R. 454 (Bkrtcy.S.D.Ind.1980); *Sims Furniture Co., Inc. v. Trotter (In Re Trotter),* 12 B.R. 72 (Bkrtcy.C.D.Cal.1981); *Kelley v. United American Bank in Knoxville (In Re Kelley),* 17 B.R. 770 (Bkrtcy.E.D.Tenn.1982). A statement of that rule is that "if consumer goods secure any price other than their own, and there is no formula for application of payments, the security interest in those goods is not purchase money." *In Re Mulcahy, supra,* 3 B.R. at 457. The rule expresses a concern for determining at what point in the reduction of the indebtedness a particular piece of collateral is released from the purchase money encumbrance. The rule is predicated on the belief that if no sequence is provided for

the release of the encumbrance in the individual items of collateral, the creditor will continue to retain a purchase money security interest in each item until the entire indebtedness is satisfied. The *Mulcahy* rule has been applied in situations where the indebtedness has been refinanced or consolidated, where the security agreement contains after acquired property clauses and cross collateralization clauses and where the collateral will secure later indebtedness. *See, e.g., In Re Manuel, supra; In Re Jones,* 5 B.R. 655 (Bkrtcy.M.D.N.C.1980).

According to its terms the *Mulcahy* rule is not applicable if there is a formula for the application of the debtor's payments. In looking for this formula we need not limit our inquiry to the four corners of the security agreement. Common law or statutory law typically provide that upon the failure of the parties to provide how a series of payments are to be applied, the courts will apply the payments according to certain established equitable principles. In Pennsylvania, the pertinent authority is *Page v. Wilson,* 150 Pa.Super. 427, 28 A.2d 706 (1942) which states in part:

> The debtor has the right to make the application, in the first instance, and failing to exercise it, the same right devolves on the creditor. When no application is made by either party, the law determines how the payments are to be applied in accordance with equitable rules and principles, and primarily, it deems the payments to have been made in discharge of the earliest liabilities of a running account—each item of credit is applied in extinguishment of the earliest debit items in the account; in other cases, it will apply the payment, when not appropriated by either party, in the way most beneficial to the creditor, that is, to the *debt least secured,* unless to the prejudice of a surety.

150 Pa.Super. at 433, 28 A.2d 706. With the application of the *Page* rule to the case at bar the disability which would transform the purchase money security interest into a nonpurchase money security interest is removed. *In Re Gibson,* 16 B.R. 257 (Bkrtcy. D.Kan.1981); *Transamerica Financial Serv-* *ices v. Matthews (In Re Matthews),* 20 B.R. 654, 657 (9th Cir.1982); *Jordan v. First Bank of Troy, Pa. (In Re Jordan),* Adv. No. 5–83–0007, slip op. (Bkrtcy.M.D.Pa., May 4, 1983). The security interest is thus not avoidable under 11 U.S.C. § 522(f). We note that our decision today undercuts our former decision in *Landaus of Plymouth, Inc. v. Scott (In Re Scott),* 5 B.R. 37 (Bkrtcy.M.D.Pa.1980). At the time of our decision in *Scott* the *Page* exception to the *Mulcahy* rule had not been drawn to the court's attention.

Although the parties have not briefed the issue of the avoidability of the lien created by the levy in the Sprague and Pristas adversaries, the pleadings and the debtors' respective bankruptcy petitions indicate that the avoidance is appropriate under § 522(f)(2). Consequently, the liens created by the levy will be avoided.

This opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 752.