724 F.2d 798
 10 Collier Bankr.Cas.2d 245, 11 Bankr.Ct.Dec. 938,
Bankr. L. Rep. P 69,725, 37 UCC Rep.Serv. 1332
 In re Frank Howard MATTHEWS and Grace Willina Matthews, Debtors.
Frank Howard MATTHEWS and Grace Willina Matthews, Appellants,
v.
TRANSAMERICA FINANCIAL SERVICES, formerly known as Pacific
Finance Loans, a California Corporation, Appellee.
 No. 82-5274.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 5, 1982.
Decided Jan. 24, 1984.
 
 Douglas D. Kappler, Lompoc, Cal., for appellants.
 David Hatch, Bette S. Paris, Paris & Paris, Santa Monica, Cal., for appellee.
 Appeal from the Bankruptcy Appellate Panel for the Ninth Circuit.
 Before FLETCHER and NELSON, Circuit Judges, and EAST,* District Judge.
 PER CURIAM:
 
 
 1
 This is an appeal by debtors who wish to avoid a security interest in household goods under Bankruptcy Code section 522(f). 11 U.S.C. Sec. 522(f) (Supp. V 1981). Under this section, debtors can avoid non-purchase money security interests in household goods. The debtors in this case argue that the purchase money character of the lender's security interest in the goods was lost in a refinancing in which the debtor received additional funds. The Bankruptcy Judge adopted this position. The Bankruptcy Appellate Panel reversed. In re Matthews, 20 B.R. 654 (Bkrtcy. 9th Cir.1982). We reverse the decision of the Bankruptcy Appellate Panel.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 The Matthews borrowed $4064.70 from Transamerica Financial Services (Transamerica) by a September 1978 agreement calling for 36 monthly payments of $165. The loan proceeds were paid directly to merchants who delivered a piano and a stereo to debtors. The loan was secured by the Matthews' "household goods and other personal property," including the piano and the stereo.
 
 
 3
 On October 31, 1979, Transamerica agreed to refinance the loan for a longer term at a monthly payment of $154 and issued a new loan for $4245.01. From this amount the Matthews paid off the old loan for $3902.64, received $63.14 in cash and paid $279.23 in insurance charges. The Matthews filed for bankruptcy in November 1980. In January 1981, Transamerica filed a complaint in Bankruptcy Court for relief from the automatic stay against repossession of collateral. The Matthews cross-complained for avoidance of Transamerica's lien.
 
 
 4
 The Bankruptcy Court held for the Matthews on the ground that the remaining security interest was not purchase money. The Bankruptcy Appellate Panel of the Ninth Circuit reversed, holding that a security interest existed in the goods to the extent of the remaining indebtedness attributable to the purchase price. The Matthews appeal under 18 U.S.C. Sec. 1293(a) (Supp. V 1981).
 
 ISSUE
 
 5
 Does the refinancing of a loan by issuing a new loan destroy the purchase money nature of a security interest for purposes of Bankruptcy Code section 522(f)?
 
 
 6
 We review the Bankruptcy Appellate Panel's interpretation of section 522(f) de novo as a question of law. See In re Howell, 638 F.2d 81, 82 (9th Cir.1980).
 
 DISCUSSION
 
 7
 Bankruptcy Code section 522(f) provides that "the debtor may avoid the fixing of a lien on an interest of the debtor in property ... if such a lien is ... a nonpossessory, nonpurchase-money security interest in any ... household furnishings [or] household goods...."[1] Before the refinancing, Transamerica had a purchase money security interest in the piano and stereo that could not have been avoided under section 522(f).[2] The Matthews claim that no purchase money security interest survived the refinancing because the refinancing is a new loan which automatically destroys the purchase money security interest.[3]
 
 
 8
 The Uniform Commercial Code, in California, as elsewhere, defines a purchase money security interest as a security interest "[t]aken by a person who ... gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." Cal.Comm.Code Sec. 9107(b) (West 1964) (U.C.C. Sec. 9-107(b) (1972)).[4] In this case, the creditor (Transamerica) gave value ($4245.01) to enable the debtors (the Matthews) to pay off a loan ($3902.64), to receive cash ($63.14), and to pay insurance charges ($279.23). The Matthews did not use the loan proceeds to acquire rights in or the use of the piano or stereo. They already owned them. The new security interest in the piano and stereo taken by Transamerica at the time of the refinancing was therefore not a "purchase money security interest" as the Code has defined it. See North Platte State Bank v. Production Credit Ass'n, 189 Neb. 44, 200 N.W.2d 1, 6 (1972).
 
 
 9
 Transamerica made the decision to issue a new loan, and, in its own words, to "pay net balance due" on the old loan, rather than to extend the payments on the old loan. This procedure benefitted Transamerica because it converted a delinquent loan into a current loan on its books. To accomplish this, Transamerica sacrificed its purchase money security interest, taking instead a security interest (non-purchase money) in the property to secure the new loan.
 
 
 10
 The vast majority of courts that have considered the issue we face here have held that refinancing or consolidating loans by paying off the old loan and extending a new one extinguishes the purchase money character of the original loan because the proceeds of the new loan are not used to acquire rights in the collateral. See Rosen v. Associates Financial Services, 17 B.R. 436 (D.S.C.1982); In re Ward, 14 B.R. 549 (S.D.Ga.1981); In re King, 19 B.R. 409 (Bkrtcy.M.D.Ga.1982); In re Hobdy, 18 B.R. 70 (Bkrtcy.W.D.Ky.1982); In re Calloway, 17 B.R. 212 (Bkrtcy.W.D.Ky.1982); In re Kelley, 17 B.R. 770 (Bkrtcy.E.D.Tenn.1982); In re Luczak, 16 B.R. 743 (Bkrtcy.W.D.Wis.1982); In re Snyder, 16 B.R. 380 (Bkrtcy.S.D.Ohio 1982); In re Johnson, 15 B.R. 681 (Bkrtcy.W.D.Mo.1981); In re Trotter, 12 B.R. 72 (Bkrtcy.C.D.Cal.1981); In re Alston, 11 B.R. 184 (Bkrtcy.W.D.Tenn.1981); In re Carnes, 8 B.R. 599 (Bkrtcy.D.Okl.1981); In re Coomer, 8 B.R. 351 (Bkrtcy.E.D.Tenn.1980); In re Jones, 5 B.R. 655 (Bkrtcy.M.D.N.C.1980); In re Mulcahy, 3 B.R. 454 (Bkrtcy.S.D.Ind.1980). But see In re Stevens, 24 B.R. 536 (Bkrtcy.D.Colo.1982) (adopting rule that purchase money character to be determined from all surrounding circumstances); In re Conn, 16 B.R. 454 (Bkrtcy.W.D.Ky.1982) (purchase money character survives refinancing); In re Chambell, 17 B.R. 597 (Bkrtcy.W.D.Mo.1982) (refinancing agreement deemed to be same as original security agreement it refinances).
 
 
 11
 The Official Commentary to the U.C.C. supports our result:
 
 
 12
 When a purchase money interest is claimed by a secured party who is not a seller, he must of course have given present consideration. This Section therefore provides that the purchase money party must be one who gives value "by making advances or incurring an obligation:" the quoted language excludes from the purchase money category any security interest taken as security for or in satisfaction of a pre-existing claim or antecedent debt.
 
 
 13
 Cal.Comm.Code Sec. 9107, Uniform Commercial Code Comment 2 (West 1964) (emphasis added).
 
 
 14
 The seminal case in this area well defines the law on this subject: "The purpose of the renewal note was to pay off the original note, an antecedent debt. The purchase money character of the security interest was extinguished when the proceeds from the first renewal note were used to satisfy the original note." In re Jones, 5 B.R. at 657. This case has been followed by the vast majority of Bankruptcy Courts cited supra. This decision has also been followed in California, see In re Trotter, 12 B.R. 72, 74 (Bkrtcy.C.D.Cal.1981); see also In re Ashworth, 16 B.R. 645, 647 (Bkrtcy.C.D.Cal.1981) and by the two federal district courts that have considered the issue, see Rosen v. Associates Financial Services, 17 B.R. 436, 437 (D.S.C.1982); In re Ward, 14 B.R. 549, 552 (D.S.Ga.1981) (also following U.C.C. Official Comment).
 
 
 15
 The argument that form should not be elevated over substance has merit in some settings, but not here. We are dealing with a statutory scheme that governs the priorities among creditors. Purchase money security is an exceptional category in the statutory scheme that affords priority to its holder over other creditors, but only if the security is given for the precise purpose as defined in the statute. And we should not lose sight of the fact that the lender chooses the form.[5] The argument that, under California law, novation does not occur without the express intent of the parties is not helpful to Transamerica, but rather supports our conclusion. See Cal.Civ.Code Sec. 1531 (West 1982). In Childs v. Stocker-LaBrea Properties, Inc., 9 Cal.App.3d 276, 280, 88 Cal.Rptr. 34, 35 (1970), the court found that a new note extinguished the old obligation when the intent of the parties was clear in the face of the documents and the new obligation had a different maturity date and a different rate of interest from the original loan. Similarly, in this case Transamerica unequivocally expressed its intent to make a new loan "to pay net balance due."
 
 
 16
 REVERSED.
 
 
 
 *
 Hon. William G. East, United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 The section provides in full:
 Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
 (1) a judicial lien; or
 (2) a nonpossessory, nonpurchase-money security interest in any--
 (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
 (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
 (C) professionally prescribed health aids for the debtor or a dependent of the debtor.
 11 U.S.C. Sec. 522(f) (Supp. V 1981).
 
 
 [2]
 Debtors argue that the original agreement did not create a purchase money security interest. Their contention that the loan's security was not meant to include the piano and the stereo is contradicted by the agreement itself, which specified "all household goods" as part of the collateral. Debtors also argue that a security agreement covering collateral other than the collateral for which the creditor advanced funds does not create a security interest. This is contrary to the language of Cal.Comm.Code Sec. 9107, which defines a purchase money security interest. See, e.g., Raleigh Industries v. Tassone, 74 Cal.App.3d 692, 699-700, 141 Cal.Rptr. 641, 645-46 (1977)
 
 
 [3]
 Because we hold that issuance of a new loan extinguishes the purchase money character of the security interest, we do not reach the debtors' alternate contention that collateral cannot secure more than its own value without destroying the purchase money security interest. The weight of authority appears to be against the debtors on this point. See generally McLaughlin, " 'Add On' Clauses in Equipment Purchase Money Financing: Too Much of a Good Thing," 49 Fordham L.Rev. 661 (1981)
 
 
 [4]
 California Commercial Code Sec. 9107 provides in full:
 A security interest is a "purchase money security interest" to the extent that it is
 (a) Taken or retained by the seller of the collateral to secure all or part of its price; or
 (b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.
 Cal.Comm.Code Sec. 9107 (West 1964).
 
 
 [5]
 Lenders will not be discouraged from refinancing under the rule. The lender can just as easily extend payments under the old loan as well as issue a new loan. Furthermore, the debtor is not the only beneficiary of refinancing. If a debtor cannot make payments on a loan, the lender would rather secure smaller payments over a longer period of time than none at all. Neither party desires default